IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

STANLEY COOK, individually and on )      CIVIL ACTION NO. 2:16-cv-15759
behalf of all other similarly situated, )
                                        )
              Plaintiffs,               )
      v.                                )
                                        )      JUDGE: JANE TRICHE MILAZZO
FLIGHT SERVICES & SYSTEMS, INC.,        )
                                        )      MAG: DANIEL E. KNOWLES, III
              Defendant.                )

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant Flight Services & Systems, Inc. ("Defendant" or "FSS") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Second Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.   INTRODUCTION

Plaintiffs' Second Amended Complaint represents their third attempt to assert a cause of action against Defendant Flight Services & Systems, Inc. ("Defendant" or "FSS") for failure to pay minimum wage and overtime under the Fair Labor Standards Act ("FLSA"), based on Plaintiffs' allegations that they were not paid for all the hours they worked, including both straight-time and overtime. Second Amended Complaint (Rec. Doc. 38 ¶ ¶1; 21).  Previously, this court granted Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint for the reason that it failed to adequately plead both their FLSA violations and collective action allegations (Rec. Doc. 37). In granting FSS' Motion to Dismiss, the court allowed Plaintiffs twenty days in which to amend their Complaint, "to the extent that they can remedy the deficiencies identified [in the

1

First Amended Complaint]." The Second Amended Complaint must likewise be dismissed as the new allegations fail to remedy such deficiencies and, like its predecessor, it cannot plausibly give rise to a claim for relief under the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Specifically, the only changes of any substance in the Second Amended Complaint are as follows:

1.    In an attempt to correct the pleading deficiencies noted by the court in its dismissal order, Plaintiffs have now provided each Plaintiff's job title, rate of pay and approximate dates of employment. They do not, however, provide approximate dates when the alleged FLSA violations occurred. Most importantly, they do not indicate an approximate number of hours for which they were denied either overtime pay or minimum wage. (Rec. Doc. 38 pp.2-3).

2.    Plaintiffs repeat, verbatim, the alleged "policies" of FSS, as set forth in the First Amended Complaint, that resulted in the claimed FSLA violations. (Rec. Doc. 38 ¶ 21). In supposed support of this allegation, Plaintiffs reference a "General Manager Job Offer Letter," attached as Exhibit A to the Second Amended Complaint. However, nothing in that Exhibit A even suggests there was a "policy and instruction" to engage in violations of the FLSA. Nor does the requirement, in the letter, that managers must maintain a 20% profit margin suggest that there was any policy or plan to violate the FLSA. It merely states a requirement of the position. As in the First Amended Complaint, these are merely unwarranted and wholly speculative inferences pled without any factual basis.

3.    Similarly, Plaintiffs now allege that FSS' Human Resource Director sent emails to management employees allegedly "warning" them when non-exempt employees' hours exceeded

30 hours per week. Even if such documents exist, they do not establish FLSA violations.[1]

4.      Plaintiffs, at ¶23, offer the astonishing – at least to them - assertion that FSS' General Managers reported to its President, Phil Armstrong, as though this were something remarkable in the history of business management. Apparently, based on this, the Court is asked to infer that Mr. Armstrong had knowledge of the FLSA violations that Plaintiffs fail to otherwise adequately allege. Of course, this allegation states nothing of the kind.

5.      At ¶25, Plaintiffs restate their allegation that Plaintiffs were not paid for work-related training required by FSS. As before, however, they do not set forth the number of hours so spent or the amount of unpaid compensation that they attribute to this training. Instead, they deceptively cite a provision of the FSS Employee Manual for the proposition FSS had a policy that *employees* would not be compensated for work-related training. In fact, the cited provision does not relate to employees; rather it applies to pre-employment testing. The complete provision –which Plaintiffs deceptively edit  - provides that FSS,

> conducts classroom training to ascertain if you will be able to complete the responsibilities for which you are being considered. All job offers are contingent on you passing the required classroom training for the position that you are being considered for.

(Ex. B to Plaintiffs' Second Amended Complaint, at p. 17).

Prospective employees who pass the pre-employment training are hired and paid for their time, as well as for subsequent on the job training. Thus, not only is this representation deceptive, it is irrelevant, as all Plaintiffs hereto were hired, and so were paid for this time. They thus lack standing to bring such a claim.

Given the foregoing, the Second Amended Complaint still fails to allege any facts in

---

[1] Although Plaintiffs presumably have such a document in their possession, it is not attached to

support of Plaintiffs' bare allegation that they regularly worked more than 40 hours in a workweek, such as specifying how often they worked more than 40 hours in a workweek and how many hours over 40 they worked during those weeks, or approximating the amount of wages that they claim was less than the required minimum wage or overtime wage, or the dates over which they allegedly were underpaid. They even fail to include sufficient information from which the employer could calculate the amount of such damages.

Plaintiffs' Second Amended Complaint should be dismissed with prejudice.   In the alternative, Plaintiffs lack standing to bring their claim under the FLSA as a collective action, and all collective action allegations should be dismissed with prejudice, allowing Plaintiffs to proceed solely on behalf of themselves and not collectively on behalf of other, unnamed similarly situated individuals.

II.      LEGAL ARGUMENT

A.      Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a cause of action if a plaintiff's Amended Complaint fails to "state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) requires a pleading to contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Complaint may be dismissed pursuant to Rule 12(b)(6) for failure to satisfy the federal notice pleading standard set forth in Rule 8. See, *Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, 201 Fed. Appx. 988, 990 (5th Cir. 2006) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1203 (3d ed. 2004) ("[T]he form and sufficiency of a statement of a claim for relief under Rule 8(a)(2) may be tested by a motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6) * * *.")).

4

Although a Complaint does not need "detailed factual allegations," more than labels and conclusions are necessary, and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal citations and quotations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") Courts do not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 695 (5th Cir. 2005)). That is, the Complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation," and a plaintiff may not rely on mere "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 500 U.S. at 557). See, also, *Christopher v. Harbury*, 536 U.S. 403, 416 (2002) (elements of a plaintiff's claim(s) "must be addressed by allegations in the Complaint sufficient to give fair notice to a defendant").

B.   Plaintiff's FLSA Claim Fails as a Matter of Law Pursuant to
     Fed. R. Civ. P. 12(b)(6).

1.   Plaintiffs Again Fail to Allege FLSA Violations with Sufficient
     Particularity.

In dismissing the First Amended Complaint, this court held that Plaintiffs "fail[ed] to allege their FLSA allegations with sufficient particularity," in that,

> Plaintiffs have failed to provide *any* type of information, that would put defendant on notice and provide Defendant with enough information to search its own records to more accurately investigate Plaintiffs' claims, e.g., date ranges, hours worked or rate of pay. Although it cannot be the case that a plaintiff must plead specific instances of unpaid overtime before being allowed to proceed to discovery to access the employer's records, it is not unfair or burdensome to require some factual allegations. Here, Plaintiffs have not bothered to supply even a factual context from the memories or experiences of being denied a minimum wage and/or overtime in violation of FLSA.

5

(Rec. Doc. 37; pp. 4-5)

Despite the minimal changes in the Second Amended Complaint, Plaintiffs' allegations in support of their FLSA claim are still insufficient to satisfy the federal notice pleading standard of Rule 8, as they fail to allege elements of a cause of action under the FLSA, instead offering a mere "formulaic recitation of the elements" (albeit supplemented by speculative suggestions of past wrongdoing), which does not suffice to establish this cause of action.  See, *Twombly*, 550 U.S. at 570.

As this Court has recognized "[i]n order to state a claim for unpaid overtime or minimum wages under the FLSA, a plaintiff must plead: (1) that there existed an employer-employee relationship during the unpaid periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime [or minimum wage] requirements; and (4*) the amount of overtime [or minimum wage] compensation due." Mejia v.  Bros. Petroleum, LLC*, E.D. La. No. 12-2842, 2015 U.S. Dist. LEXIS 74339, at *10 (E.D. La. June 9, 2015) (quoting *Johnson v. Heckmann Water Res., Inc.*, 758 F.3d 627, 630 (5th Cir. 2014)).  (Emphasis added).

Here, however, the Second Amended Complaint fails to meet even this low bar. While the Second Amended Complaint does identify the plaintiffs and recites their job titles, their rate of pay and the dates of their employment, it fails to include any facts, other than a formulaic recitation of the elements of the claim; fails to include even an approximation of the amount of overtime or unpaid minimum wages claimed; and fails to establish that plaintiffs' overtime claims are within the coverage of the FLSA (see section (B) (1) (b), below)

Although the Second Amendment Complaint adds minimal information that is not in the First Amended Complaint, Plaintiffs fail to allege any new facts to show that FSS violated

overtime or minimum wage requirements. Rather, they wish the court to infer FSLA violations from scraps of misrepresented or misinterpreted unrelated facts, e.g., a manager's job description requiring a 20% profit margin – as if that were something unusual in business – or prior claims of FLSA violations unrelated, and irrelevant, to this case. Moreover, they fail to assert, even in approximate terms, the amount of compensation allegedly owed to them. As in the dismissed First Amended Complaint, Plaintiffs failure to plead the approximate hours per week they claim to have worked, regular and/or overtime for which they were not paid, the period over which they allegedly worked such hours[2], and their rate of pay or position during those times is fatal to their Second Amended Complaint.

As discussed in the previous Motion to Dismiss, courts in this jurisdiction require a plaintiff's allegations to at least put defendants on notice as to approximate dates and hours worked. *Mejia*, E.D.La. No. 12-2842, 2015 U.S. Dist. LEXIS 74339, at *18-19 (finding that plaintiffs adequately pleaded the uncompensated overtime element of their FLSA claim because they alleged that they worked approximately 70-80 hours per week before July of 2012, and then approximately 50 hours per week thereafter, without receiving overtime pay). Here, Plaintiffs have not alleged any approximation of the dates when so-called FLSA violations occurred (instead offering only Plaintiffs' dates of employment), and only alleged a generalized failure hours worked up to and over forty hours. This court held this was insufficient in the First Amended Complaint, and it remains insufficient in the Second Amended Complaint. See, generally, *Anderson v. Blockbuster, Inc.*, CA No. 10-158, 2010 U.S. Dist. LEXIS 53854, *6-7 (E.D. Cal. May 4, 2010) (general allegations that plaintiff worked more than 40 hours per week

---

[2] The Second Amended Complaint asserts only the plaintiffs' dates of employment – not the dates when the alleged violations occurred.

and defendants "willfully failed to pay all overtime" were "no more than conclusions [and]. . .not entitled to the assumption of truth").

Courts in other jurisdictions also routinely hold that to state a claim for relief under the FLSA, a plaintiff must allege, at least approximately, the number of hours they worked per week for which they were not compensated and the timeframe in which such hours were worked. See, *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 509 (E.D.N.Y. 2011) (holding that plaintiffs "must provide at least some approximation of the overtime hours that defendants required them to work and a time frame for when those hours were worked"); *Zhang v. L.G. Apparel Inc.,* E.D.N.Y. No. 09-CV-3240, 2011 U.S. Dist. LEXIS 26816, at *4 (E.D.N.Y. Feb. 18, 2011) ("At a minimum, an FLSA complaint 'must set forth the approximate number of unpaid regular and overtime hours allegedly worked.'") quoting, *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, S.D.N.Y. 10 Civ. 2661, 2011 U.S. Dist. LEXIS 8585, at *21 (S.D.N.Y. Jan. 28, 2011); *Mell v. GNC Corp.*, W.D.Pa. No. 10-945, 2010 U.S. Dist. LEXIS 118938, at *8-9 (W.D. Pa. Nov. 9, 2010) (finding that where plaintiffs failed to allege approximately how many hours each week they worked without being paid, the facts alleged by plaintiffs failed to establish a right to relief).

Specificity in the complaint permits a defendant to evaluate a plaintiff's claim - both its likelihood of success and the potential amount of any recovery. *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007). Indeed, "more is required of a plaintiff than an 'all purpose pleading template' with allegations providing no factual context and no way for the court to determine that the plaintiff has stated a claim as opposed to repeating the statutory elements of the cause of action." *Coleman v. John Moore Servs., Inc.*, S.D.Tex. No. H-13-2090, 2014 U.S. Dist. LEXIS 1501, at *10 (S.D. Tex. Jan. 7, 2014) (granting motion to dismiss plaintiff's FLSA

8

claim where complaint merely alleged that Plaintiff worked "in excess of forty (40) hours" during "one or more weeks" of his employment).

Similarly, in *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012), the court held that allegations that plaintiffs "regularly worked hours over 40 in a week and were not compensated for such time" were insufficient to state a claim under *Twombly* and *Iqbal* because such allegations were "threadbare," "speculative," and "little more than a paraphrase of the statute." Similarly, in *DeJesus,* 726 F.3d 85, 86, 89, the court held that plaintiff's allegation that she worked "more than forty hours per week during 'some or all weeks'" was inadequate because it was "devoid of any numbers to consider beyond those plucked from the statute." The court in *Zhang*, in rejecting a similar complaint as insufficient, noted that,

> Plaintiff's complaint here states only that "she worked over forty (40) hours per week" and "often worked over ten (10) hours per day." The Amended Complaint says nothing about how much she was compensated for the hours she worked or even approximately how many overtime hours she worked. This deficiency is another reason to deny plaintiff's motion.

E.D.N.Y. No. 09-CV-3240, 2011 U.S. Dist. LEXIS 26816, at *10-11 (internal citations and quotations omitted). See, also, *Anderson,* CA No. 10-158, 2010 U.S. Dist. LEXIS 53854, *6-7 (plaintiff's general allegation that he worked more than 40 hours per week was mere conclusion that was "not entitled to the assumption of truth") (quoting *Iqbal*, 556 U.S. 664).

Similarly, the Second Amended Complaint states only that the plaintiffs, "worked over forty (40) hours in a workweek under the FLSA." (Rec. Doc 38 ¶7). This offers no greater specificity than the language rejected in *Zhang* or *Anderson* or any other of the above-cited cases. In fact, the language is even less specific than that rejected by this court in its dismissal of the First Amended Complaint. Plaintiffs offer no information as to the number of straight-time hours for which they allege they were not compensated. Rather, throughout the Second Amended

Complaint, the two elements of their claim, overtime and minimum wage claims, are blurred together, with not so much as an approximation of the amount of either element of damages. As discussed at length in defendant's Motion to Dismiss the First Amended Complaint, a claim under the FLSA, "should indicate the applicable rate of pay and the amount of unpaid minimum or overtime wages due," particularly where the earnings a plaintiff alleges he is owed cannot be readily determined from his statements regarding his pertinent salary and working hours. *Zhong*, 498 F. Supp. 2d at 629.

Moreover, Plaintiffs once again fail to allege their rates of pay *at the time of the alleged violations*. At best, they offer only their pay rates over the *entire period* of their respective tenures with FSS. There is nothing to indicate which rates and which dates pertain to the claimed violations, or any other information which would enable the defendant to calculate the amount of the claimed damages or to investigate the various violations so vaguely asserted here. It further makes it impossible to determine, from the face of the Second Amended Complaint, the regular or overtime compensation that Plaintiffs claim they are owed.

Most instructive in this regard is this Court's recent holding in *Nieto v. Pizzati Enters.* No. 16-cv-5351, 2016 U.S. Dist. LEXIS 164164 (E.D. La. 11/29/16). In that case, as here, the plaintiff alleged only that, ' "[f]or every hour that she worked in excess of forty in any particular week she was still paid $10.00 per hour." ' Id. at p. 33. And, as in the Second Amended Complaint here, the plaintiff in *Nieto*,

> does not indicate the time period during which she regularly worked more than forty hours a week and was denied overtime compensation by Defendants. Plaintiff does not allege whether she still am employee of Defendants and if not, the date that she terminated her employment with Defendants, making it impossible on the face of the complaint to approximate the time period during which she was denied overtime compensation and the amount of overtime compensation due.

Id. at 34.

In *Nieto*, this Court held that, "[b]ecause the plaintiff has not alleged the time period during which she was under-compensated, her complaint feels to put Defendant on notice of "the approximate date ranges and approximate number of hours worked" for which Plaintiff has failed to sufficiently plead the fourth requirement for an overtime claim under the FLSA. This is precisely the problem with the Second Amended Complaint in the instant case. Moreover, for the same reasons, Plaintiffs claim for unpaid minimum wages must likewise fail.

The only meaningful distinction between *Nieto* and the instant case is that, in *Nieto*, the court gave the Plaintiff a chance to amend her complaint. Here, Plaintiffs have already been given that chance twice, and, after the dismissal of the First Amended Complaint, have still come up short. Taken together, the factual allegations noticeably absent from Plaintiff's Second Amended Complaint render it wholly inadequate. The minimal additional information added to the First Amended Complaint does not cure the deficiencies which, as this court observed, fail to give FSS information that, "would put Defendant on notice and provide defendant with enough information to search its own records to more accurately investigate Plaintiffs' claim…" (Rec. Doc. 37 p. 5). Like its predecessor, the Second Amended Complaint should be dismissed.

2.    The Amended Complaint is inadequate because the applicability of the FLSA  overtime provisions cannot be determined from the allegations.

While FSS acknowledges that plaintiffs are not required to plead specific instances of unpaid overtime, ***some*** factual allegations are required. See, *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88-91 (2nd Cir. 2013) ("[I]t is employees' memory and experience that lead them to claim in federal court that they have been denied overtime in violation of the FLSA in the first place. Our standard requires that plaintiffs draw on those resources in providing complaints with sufficiently  developed factual allegations."). Because of the nature of FSS' business, specificity in this regard is crucial because it is determinative of the applicability of the FLSA to this defendant.

11

As was the case with the First Amended Complaint, FSS is unable to determine, from the face of the Second Amended Complaint, whether and to what extent the FLSA even applies here. Plaintiffs' failure to clearly state how much, if any, of their claim consists of overtime hours makes it impossible for the defendant to determine whether an exemption from FLSA overtime rules applies. Section 13(b)(3) of the FLSA [29 USC §213(b)(3)] provides that,

> (b) Maximum hour requirements. The provisions of section 7 [29 USCS §207 of the Fair Labor Standards Act providing overtime obligations] shall not apply with respect to--
>
> (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935 [49 USCS § 31502]; or
>
> (2) any employee of an employer engaged in the operation of a rail carrier subject to part A of subtitle IV of title 49, United States Code [49 USCS §§ 10101 et seq.]; or
>
> (3) **any employee of a carrier by air subject to the provisions of title II of the Railway Labor Act**…

(Emphasis added).

Thus, any carrier subject to the Railway Labor Act ("RLA") is exempt from the application of the FLSA's overtime rules (although not its minimum wage rules). In *Roca v. Alphatech Aviation Servs.*, 961 F.Supp.2d 1234,1238 (S.D.Fla.2013), the court stated that,

> Under the FLSA, employers are required to pay their employees at overtime rates for work in excess of 40 hours per week. See 29 U.S.C. § 207. However, certain classes of employees are exempt from this overtime requirement. Thus, the air carrier exemption removes from coverage "any employee of a carrier by air subject to the provisions of Title II of the Railway Labor Act." Id. § 213(b)(3). Title II of the Railway Labor Act ("RLA"), in turn, covers "every common carrier by air . . . , *and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service." 45 U.S.C. § 181.*

(Emphasis added).

Employers such as FSS who are not themselves air carriers, but who perform services for air carriers, are considered carriers subject to the Railway Labor Act, and so are exempt from the FLSA's overtime regulations, if they satisfy the two-prong test established by the National Mediation Board ("NMB") and the courts. *Roca* at 10; *Verrett v. The Sabre Grp.,* 70 F. Supp. 2d 1277, 1281 (N.D. Okla.  1999). The NMB, which has jurisdiction over carriers in NLRB-related matters, has repeatedly determined that airline services contractors performing the same and similar functions under virtually identical factual circumstances as FSS are significantly controlled by carriers and, thus, are subject to RLA jurisdiction. Indeed, FSS, through its parent company, International Total Services, Inc. has, in numerous prior decisions of the National Mediation Board, been determined to be subject to the RLA.  See*, International Total Services,* 20 NMB 537 (1993); *International Total Services., Inc.,* 16 NMB 44 (1988); *International Total Services., Inc*., 11 NMB 67 (1983), *International Total Services,* 9 NMB 392 (1982); and *International Total Services*, 26 NMB 12 (1998).

Recently, the D.C. Circuit reaffirmed that employers such as FSS are indeed subject to the jurisdiction of the Railway Labor Act. *ABM Onsite Servs.-West, Inc v. NLRB,* 849 F. 3d 1137 (D.C. Cir. 2017). Thus, FSS is not subject to any overtime claims under the FLSA in this case.  As before, FSS intends to, and hereby does raise this exemption as an affirmative defense. However, given the vagueness of the allegations in the Second Amended Complaint, it is impossible to determine whether overtime comprises any part of the claim, much less how great a part. It may be that all of the claim consists of overtime. However, as it stands, neither the Defendant nor the court has anyway of knowing. For this reason, the Second Amended Complaint should be dismissed.

3.      Plaintiffs Fail to Allege Facts to Sufficiently Plead Collective Wage
and Hour Violations for "All Others Similarly Situated."

Plaintiffs purport to plead their FLSA claim on a collective action basis under 29 U.S.C.

§216(b).  "There are two requirements to proceed as a representative action: (1) all plaintiffs must

be 'similarly situated,' and (2) a plaintiff must consent in writing to take part in the suit."

*Wischnewsky v. Coastal Gulf & Int'l, Inc.*, E.D. La. No. 12-2277, 2013 U.S. Dist. LEXIS 62965,

at *9 (E.D. La. May 2, 2013). Although the FLSA does not define 'similarly situated,' court[s]

have held that the plaintiffs must allege facts sufficient to demonstrate that they and potential

plaintiffs were victims of a common policy or plan that violated the law.  *Zhong*, 498 F. Supp. 2d

at 631 citing, *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) ("While

neither the FLSA nor its accompanying regulations define the term "similarly situated," courts

have held that plaintiffs must, at least, provide "a modest factual showing sufficient to

demonstrate that they and potential plaintiffs . . . were victims of a common policy or plan that

violated the law.") See, also, *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261-62 (providing an

example of sufficient pleading for similarly situated employees which included supporting

affidavits from other restaurant managers, a description of the company-wide policy at issue, and

evidence that the identified group of employees were subject to that policy).

Where, as here, plaintiffs attempt to bring suit on behalf of "others" who "are referenced

only minimally in the body of the complaint itself," plaintiffs have not offered sufficient notice

of their claim or a factual basis from which a court can determine whether similarly situated

plaintiffs even exist.  *Zhong*, 498 F. Supp. at 631  (to the extent a plaintiff attempts to signal an

effort to initiate a collective action merely by invoking the phrase "others similarly situated," he

is unable to meet the standard for alleging an action on behalf of others similarly situated). For

example, in *Creech*, the court found the plaintiff's collective action allegations to lack the level

14

of factual specificity necessary to survive a Rule 12(b)(6) motion where the complaint failed to provide any description or details about other "similarly situated" employees, other than allegations that other class members performed the same or similar job duties in that they "provided customer services" for defendants. *Creech v. Holiday CVS, LLC*, M.D.La. No. 11-46-BAJ-DLD, 2012 U.S. Dist. LEXIS 144838 at *7-8 (M.D. La. Sept. 28, 2012) ("This is not descriptive enough to give rise to a plausible right to relief.").

Indeed, the revised Collective Action Allegations in the Second Amended Complaint still purports to be brought on behalf of the named plaintiffs and others similarly situated. However, Plaintiffs still fail to allege any facts to demonstrate who any of these other employees are. While they now offer the limited additional information of various job titles, they do not describe job duties at all. Nor do the plaintiffs sufficiently plead that they truly are "similarly situated" to one another or to those putative collective-class members that they seek to add to the case. The only clues the Second Amended Complaint offers regarding the possible identities of the individuals "similarly situated" to Plaintiffs are allegations that similarly-situated employees are hourly employees, classified as "ramp agents" or other job titles without any description of the concomitant job duties, and that they were subject to Defendant's alleged "common practice and policy" of unlawfully failing to pay (i) minimum wage for "all hours worked under forty (40), and for any overtime compensation for all hours worked over forty (40) in a workweek." (Rec. Doc. 38¶32). This language is substantially identical to that rejected by this court in dismissing the First Amended Complaint. (See Rec. Doc 23. ¶17). In fact, Plaintiffs apparently seek to give themselves leave to expand the purported collective by noting that the proposed class "*include[s] but [is] not limited*" to the vague job titles, implying that there are putative members of the collective who have other job titles and other duties and who therefore may not be,

15

"similarly situated." (Rec. Doc. 38 ¶32).

As in the First Amended Complaint, the Second Amended Complaint does not clarify whether the alleged harm done was due to a failure to pay minimum wage, regular wages, or overtime wages. Most significantly, the Second Amended Complaint does not state, for any of the Plaintiffs, how much of each type of compensation they failed to receive. Consequently, FSS is once again left completely in the dark as to the amount and type of damages being claimed. [3]

Where a complaint fails to sufficiently allege the attributes of the similarly situated employees, the collective action claim may be dismissed at the pleading stage, and district courts within the Fifth Circuit have found it appropriate to do so. *Creech,* M.D.La. No. 11-46-BAJ-DLD, 2012 U.S. Dist. LEXIS 144838 at *7-8 (granting defendants' motion to dismiss the collective action component of plaintiff's claim under the FLSA); *see also, Pickering v. Lorillard Tobacco Co.,* M.D.Ala. No. 2:10-CV-633-WKW[WO], 2011 U.S. Dist. LEXIS 3647, at *5-7 (M.D. Ala. Jan. 13, 2011) (dismissing FLSA collective action allegations where there was no description of job duties, or even job titles of the proposed similarly situated employees, nor any allegations concerning the other employees' pay provisions). Here, Plaintiffs seek to represent a broad and vague group of individuals of unspecified job titles and unspecified job duties of these unnamed positions. Additionally, there is not even an approximation of the amount and type of damages sought by any prospective plaintiff. Accordingly, the collective action allegations of Plaintiffs' Second Amended Complaint should be dismissed as insufficiently pled.

---

[3] Additionally, Plaintiffs, in their Second Amended Complaint now attempt to introduce a nationwide scope to their claims. But prospective plaintiffs outside of Louisiana may be subject to different minimum wage and overtime laws, including state and municipal laws and even wage laws applicable to individual airports. Plaintiffs can hardly be "similarly situated" if they seek recovery under different laws.

C. Plaintiffs' Second Amended Complaint Does Not Relate Back To The Date Of The Original And Should Be Dismissed, Or, *Alternatively,* Time-Bars Any Plaintiffs' Claims For Damages For Prior To May 5, 2014.

    1. Plaintiffs Second Amended Complaint Does Not Relate Back to the Date of the Filing on the Original Complaint.

Plaintiffs may contend that the Second Amended Complaint should relate back to the filing of the date of the original Complaint. However, as set forth below, plaintiffs cannot satisfy the applicable standard for relation back under Fed. R. Civ. P. 15(c). The new allegations concerning defendant's conduct now being asserted by the plaintiffs do not arise out the same core operative facts as the original Complaint, and nothing in the original Complaint in any way gives notice to Flight Services that the cause of action plaintiffs were seeking was nationwide in scope.

Accordingly, plaintiffs' Second Amended Complaint does not relate back to the filing of the date of the original Complaint and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, all claims of any plaintiff for damages accruing prior to May 5, 2014, must be deemed time barred by the applicable statute of limitations.

    2. The Second Amended Complaint Does Not Relate Back if It Does Not Arise Out of the "Core Operative Facts" Set Forth in the Original Complaint and Where the Original Complaint Does Not Provide Defendants Adequate Notice of the Scope of the New Claims, the Number of Plaintiffs, or the Facts Set Forth in the Second Amended Complaint, and therefore, should be dismissed.

"The general practice under Rule 15(c) is to permit relation back so long as the new claim arose out of the defendants' conduct as set forth in the original complaint and the original complaint gave defendant notice sufficient to avoid prejudice." *Constr. Interior Sys., Inc. v. Donohoe Cos., Inc.*, 813 F. Supp. 29, 37 (D.D.C. 1992) ("Clearly, both elements -- same conduct and adequate notice -- must be satisfied before relation back of new claims is permitted.")

(internal citation omitted). Adequate notice of new claims and facts set forth in an amended complaint <u>must</u> be found within the plaintiff's original complaint. Id., (emphasizing that adequate notice must be found in the original complaint rather than in any other papers subsequently filed in the action, discovery materials or in discussions among the parties). Thus, amendment of a complaint is only proper if the original pleading put the defendant on notice of the "particular transaction or set of facts" that the plaintiff believes to have caused the complained of injury. ." *Percy v. San Francisco Gen. Hosp.*, 841 F.2d 975, 978-79 (9th Cir. 1988).

> In pertinent part,  Fed.R. Civ. Pro. 15(c) states,
>
> (c) Relation Back of Amendments.
>
> > (1)    When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
> >
> > > **(B)    the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out in the original pleading;**

Rule 15(c) allows a plaintiff to amend its complaint to add a claim or defense when that claim or defense "arose out of the conduct, transaction, or occurrence" set forth in the original pleading. See, *YWCA of the Nat'l Capital Area, Inc. v. Allstate Ins. Co.*, 214 F.R.D. 1, 6, citing, Fed. R. Civ.P. 15(c), and, *United States v. Hicks*, 350 U.S. App. D.C. 279, 283 F.3d 380, 388 (D.C. Cir. 2002) (discussing the relation-back doctrine). Amendments that build on previously alleged facts will often relate back. *Hicks*, 283 F.3d at 388. However, "those that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." Id. The necessary inquiry for the Court is whether the opposing party has been put on notice regarding the claim. *YWCA* at 6, citing, 6A Fed. Prac. & Proc. Civ. 2d § 1497. If the alteration is "so substantial that it cannot be said that defendant was given adequate notice . . .

18

*then the amendment will not relate back and will be time barred if the limitations period has expired.*" Id. (Emphasis added).

The Rule 15(c) requirement of fair or adequate notice applies to class actions where plaintiffs, through their pleading, must provide the defendants notice of the alleged claims, the scope of their liability, and the identity and size of the class members. *American Pipe & Construction v. Utah*, 414 U.S. 538, 554-55, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974). This notion of fair notice of the size and scope of a class is true whether it is a class action or an FLSA collective action. *Charlot v. Ecolab, Inc,.* 97 F. Supp. 3d 40, 53 (2015). Applying a "fair notice" analysis and the rationale in *American Pipe*, the *Charlot* court in an FLSA action determined that an amended complaint did not relate back because the defendant was denied fair notice when the plaintiffs sought to change the nature of the FLSA action to include state claims and number/scope of plaintiffs to include individuals of many states. *Charlot* at 51-57. In rejecting the plaintiffs' argument that a defendant-employer with reaches throughout the nation is put on notice in every state it operates by the filing of an FLSA collective action, the *Charlot* court stated:

> Indeed, under the Named Plaintiffs' theory, a national defendant should be on notice of potential class claims in any state it operated as soon as an FLSA collective action was filed, and before any representative plaintiffs were identified and joined the action. This reasoning would defeat the purpose of Rule 15(c)'s notice requirement, if the filing of a single FLSA collective action automatically put a national defendant on notice of any and all potentially related state class claims that may arise. See, e.g., *Cliff*, 363 F.3d at 1132-33 (denying relation back where original complaint alleging Florida class claim did not put defendant on notice of proposed nationwide class); *Midland Funding LLC v. Brent*, No. 08-CV-1434, 2010 U.S. Dist. LEXIS 15530, 2010 WL 703066, at *3 (N.D. Ohio Feb. 22, 2010) (denying relation back where original complaint alleging Ohio class claim did not put defendant on notice [**37] of proposed nationwide class); *Feuerstack v. Weiner*, No. 12-CV-04253, 2013 U.S. Dist. LEXIS 106321, 2013 WL 3949234, at *4 (D.N.J. July 30, 2013) (denying relation back where original complaint alleging New Jersey class claim did not put defendant on notice of proposed

> nationwide class). Thus, the court is unpersuaded that the original complaint afforded defendant fair notice of the proposed individual and representative state law claims that the original plaintiffs did not allege, and did not have standing to bring at the time the original complaint was filed.

*Charlot* at 56.

While the facts here are slightly different, the rationale remains the same. Here, in the original pleading filed by plaintiffs on October 27, 2016, the plaintiffs attempted to plead an action for violations of the FLSA. Specifically and relevantly, they alleged that "a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district[]" – i.e., the Eastern District of Louisiana. Original Complaint, (Rec. Doc 1, ¶5). Plaintiffs also alleged violations only by FSS' Louisiana general managers Burger and Ramjattan. (Rec. Doc. 1, ¶13.) On the Civil Cover Sheet, plaintiffs indicate that the only basis of this Court's jurisdiction is the existence of a federal question. (Rec. Doc 2). This is because all plaintiffs are Louisiana residents so there is no diversity jurisdiction. See, (Rec. Doc 37, ¶2). In other words, plaintiffs' original Complaint pleads a cause of action arising from an alleged wrong occurring *wholly within Louisiana.* Although Flight Services is a company with locations nationwide, the scope of the claim in the original pleading was limited to the Eastern District of Louisiana. That is the cause of action that the plaintiffs originally plead, that the opt-in plaintiffs joined, and of which Flight Services was given notice.[4]

Plaintiffs' Second Amended Complaint changes the "operative facts" and the nature of the action by expanding the FLSA collective action from one alleging wrong-doing within the Eastern

---

[4] Furthermore, wage and hour requirements in FSS' other locations may vary according to state law and municipal ordinances. Notice of a *Louisiana* claim can hardly serve as notice of a violation of the laws of other jurisdictions.

District of Louisiana, to one alleging wrong doing nationwide. (Rec. Doc 37, ¶¶22-23). The operative facts against Burger and Ramjattan were removed from the Second Amended Complaint. Instead, the allegations involve Flight Services' unnamed HR Director and other high-level employees outside of Louisiana. (Id.) By thus changing the operative facts and the scope of the claim being asserted (without any substantiation from representative plaintiffs outside of Louisiana), the Second Amended Complaint no longer "asserts a claim *** that arose out of the conduct, transaction, or occurrence set out in the original pleading[.]" Instead, the Second Amended Complaint asserts new operative facts and a new FLSA cause of action which drastically changes the scope and number of the potential collective action plaintiffs. This exceptionally large potential class was not pled in the original complaint and, therefore, Flight Services did not have fair notice of these class representative plaintiffs intention to represent a nationwide class until May 5, 2017, and, therefore, this amendment cannot relate back to the original pleading.

Given that proof of the claims in the Second Amended Complaint involves evidence that is entirely different from the evidence required to prove the claims in the original Complaint, the new facts and claims in the Second Amended Complaint do not arise out of the same transaction or occurrence as the claims set forth in the original Complaint. Accordingly, the Amended Complaint does not relate back to plaintiffs' original Complaint and should be dismissed.

3. *Alternatively*, the Second Amended Complaint Does Not Relate Back if It Does Not Arise Out of the "Core Operative Facts" Set Forth in the Original Complaint and Where the Original Complaint Does Not Provide Defendants Adequate Notice of the Scope of the New Claims, the Number of Plaintiffs, or the Facts Set Forth in the Second Amended Complaint, and therefore, Plaintiffs' claims should be time-barred for any claim of damages arising prior to May 5, 2014.

21

For all the reasons stated in the preceding sections, should this Court decline to dismiss plaintiffs' Second Amended Complaint in its entirety, Flight Services *alternatively* requests this Court limit any claim for damages by any current or prospective plaintiff alleged to only those arising on or after May 5, 2014. Since the Second Amended Complaint cannot relate back, the statute of limitations should begin to toll for all plaintiffs thus far joined as of May 5, 2017 – which is the filing of the Second Amended Complaint.[5] Any plaintiff who alleges FLSA violations that are older than three (3) years prior to May 5, 2017, must be dismissed as such claims are outside the statute of limitations. Thus, the following individuals and putative class plaintiffs have plead, in the Second Amended Complaint, that their most recent date of employment was greater than three years ago:

- Christian Flores, last day of work January 2014. (Rec. Doc 38, ¶ 9).

- Pablo Holdine, last day of work February 2014. (Id., ¶ 11).

Accordingly, these plaintiffs and any others who may be discovered must be dismissed with prejudice as they have failed to file within the statutory deadline and all other plaintiffs must be time-barred to May 5, 2014.

IV.    <u>CONCLUSION</u>

Because the named Plaintiffs have failed to state a claim upon which relief can be granted, they lack the requisite standing to bring a claim for violation of the FLSA as a collective action. Therefore, Plaintiffs' Second Amended Complaint, for all of the foregoing reasons, must be dismissed in its entirety, with prejudice.  Solely in the alternative, at a minimum, the portions of Plaintiffs' Complaint containing collective-action allegations should be dismissed, with prejudice,

---

[5] Any additional opt-in plaintiffs would be tolled on the date of filing.

and this case should not be allowed to proceed as a collective action.

Respectfully Submitted,

LoPRESTI, MARCOVY & MAROTTA, LLP

/s/ *Thomas P. Marotta*
THOMAS P. MAROTTA*
(admitted *pro hac vice,* Ohio Bar No. 0024884)
MICHAEL S. LEWIS
(admitted *pro hac vice,* Ohio Bar No. 0079101)
1468 West Ninth Street
330 Western Reserve Building
Cleveland, Ohio 44113
T: (216) 241-7740
F: (216) 241-6031
E: tpm@lmm-llp.com
E: msl@lmm-llp.com

*\*Trial Attorney*

CHAFFE McCALL, LLP

/s/ *Sarah Voorhies Myers*
SARAH VOORHIES MYERS (La. Bar No. 30107)
2300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163
T:  (504) 585-7009
F: (504) 544-6092
E: myers@chaffe.com

*Attorneys for Defendant*
*Flight Services &Systems, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of May, 2017, a true and correct copy of the

foregoing Defendant's Memorandum in Support of Motion to Dismiss Plaintiff's Second

Amended Complaint was served by filing the same in this Court's CM/ECF System, upon the

23

following:

Christopher L. Williams (32269)
Williams Litigation, L.L.C.
639 Loyola Ave., Suite 1850
New Orleans, LA 70113

and

Michael T. Tusa, Jr. (02154)
Sutton, Alker & Rather, LLC
4080 Lonesome Road, Suite A
Mandeville, LA 70448

*Attorneys for Plaintiff*

                                        /s/ *Thomas P. Marotta*
                                        _____