IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STANLEY COOK, individually and on | ) | CIVIL ACTION NO. 2:16-cv-15759 |
| behalf of all other similarly situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | JUDGE: JANE TRICHE MILAZZO |
| FLIGHT SERVICES & SYSTEMS, INC., | ) | MAG: DANA M. DOUGLAS |
| Defendant. | ) | |

## FLIGHT SERVICES & SYSTEMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR DISCOVERY AND OTHER APPROPRIATE RELIEF PURSUANT TO RULE 56(d)

The objective record contradicts the alleged "sharp" discovery practices by FSS that form the entire basis of Plaintiffs' motion and, rather, establishes that FSS has fulfilled its discovery obligations timely and in good faith. As basis for their Rule 56(d) motion, Plaintiffs claim that FSS failed to timely produce three airline contracts (the Allegiant Contract, the Frontier Contract, and the Spirit Contract) purportedly in violation of a Court Order (Rec. Doc. 83), and further, that FSS has continued to withhold portions of these contracts – but the record firmly establishes that FSS did not violate any Court Order, that FSS timely and in good faith produced these contracts, and that FSS is not withholding any portions of these contracts.

Moreover, even if Plaintiffs' allegations were correct (they are decidedly not), the record further establishes that Plaintiffs cannot carry their burden for relief under Fed. R. Civ. Proc. 56(d), which requires them to establish that they have diligently pursued the discovery now sought (*i.e.*, the depositions of FSS's airline clients) and that such discovery will create a genuine issue of material fact sufficient to defeat summary judgment. Plaintiffs can prove neither. Plaintiffs have failed to schedule the depositions of any of FSS's airline clients in the nearly two and a half years that this action has been pending – despite knowing their identities since the inception of litigation and serving other third-party discovery upon these airlines. Further, the depositions of FSS's airline clients cannot create any genuine issue of material fact. Although

1

Plaintiffs allege that they need the depositions of FSS's airline clients to understand the extent of "control" exercised by the airlines over FSS's employees for purposes of the Fair Labor Standard Act's ("FLSA") Air Carrier Exemption, the deposed Plaintiffs have uniformly admitted to the pervasive "control" that airlines exercise over every aspect of FSS's operations and employees. Plaintiffs' own testimony is fatal to their overtime claims, and the additional third-party discovery belatedly sought by Plaintiffs is immaterial.  Plaintiffs' request to seek such immaterial discovery – which will admittedly delay this Court's pre-trial deadlines and trial setting – should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Because Plaintiffs' motion is based solely upon allegedly improper discovery practices by FSS, FSS will briefly address the procedural history of this case.  Specifically, FSS will establish that numerous, objective record citations contradict the allegations of improper and dilatory discovery tactics by FSS.[1]

A.      *The Two Written Discovery Requests at Issue.*

In support of their motion, Plaintiffs repeatedly conflate FSS's discovery response regarding its Railway Labor Act ("RLA") defense with FSS's discovery response regarding production of nationwide airline contracts (which Plaintiffs claim they need to prosecute their claims for unpaid training time).  But these are two <u>different</u> discovery requests served by Plaintiffs.  Specifically, in December 2017, Plaintiffs served a discovery request seeking documents supporting FSS's affirmative defenses to Plaintiffs' alleged nationwide collective action, including FSS's defense that its employees are exempt from the FLSA's overtime requirements because FSS is a "carrier" subject to the RLA:

---

[1] This is not the first time that Plaintiffs have alleged in the record that FSS has engaged in improper discovery practices – which have proven to be untrue.

**Request for Production No. 2:**

> All documents that you may use to support the defenses asserted in your Answer to Plaintiffs' Complaint, including the defense that Defendant is not required to comply with the FLSA's overtime requirements because of the Railway Labor Act or any other reason.

FSS objected to this request on several grounds, including that it was geographically overbroad since all Plaintiffs worked exclusively at the New Orleans Airport and no nationwide collective has been certified, and further, that such a request was premature because discovery was on-going. Nevertheless, FSS produced: (i) 32 pages of record documents in which the controlling federal agency (the National Mediation Board or "NMB") found FSS's parent company to be a "carrier" under the RLA; (ii) the contract entered into between FSS and British Airways (FSS's only current client at the New Orleans Airport);[2] and (iii) a British Airways Compliance Audit of FSS's operations at the New Orleans Airport dated February 16, 2018. Moreover, FSS specifically reserved the right "to supplement" and "to amend" this response."[3] Plaintiffs possessed all of these documents as of July 3, 2018 at the latest.

As noted in FSS's pending Motion for Partial Summary Judgment, when considering whether an employer is a "carrier" within the RLA whose employees are exempt from the FLSA's overtime requirements, federal courts and the NMB have held that because "the RLA deals with the present status and present interest of employees, the inquiry centers on the <u>current</u>

---

[2] Contrary to Plaintiffs' claim that "even the one contract (British Airways) that Defendant produced before Plaintiffs travelled to Cleveland on two separate occasions to take depositions is missing hundreds of pages" because the "page numbers start[] at page 71 of 134, then go[] from page 35 of 134 to page 46 of 134," *see* Rec. Doc. 179-2, at ¶ 27, FSS produced the entirety of the British Airways Contract to Plaintiffs and the supposedly "missing" and non-sequential pages cited by Plaintiffs are nowhere to be found in the contract. As evidence, FSS refers to the produced British Airways Contract (filed into the record under seal as Exhibit G(1) to FSS's Motion for Partial Summary Judgment), which clearly contains all pages numbered sequentially from "Page 1 to 54" to "Page 54 of 54."

[3] *See* FSS's Supplemental Responses, at Response to Request for Production No. 2, attached as "Exhibit A."

state of affairs."[4] *Venegas v. Glob. Aircraft Serv.*, No. 2:14-cv-249, 2016 U.S. Dist. LEXIS 130164, at *22 (D. Me. Sep. 23, 2016) (quoting *In re Argenbright Sec., Inc.*, 29 NMB 332, 337 (2002)) (emphasis added); *see also John Menzies, PLC d/b/a Ogden Services, Inc.*, 31 NMB 490, 505 (2004) (distinguishing previous contracts and operations and focusing on current operations because "[t]he NMB has long held that the RLA deals with the present status and present interests of employees").  Because British Airways is the only airline that FSS currently services at the New Orleans Airport (and is the only airline that FSS has serviced at the New Orleans Airport for years), the British Airways materials were the only documents that FSS intended to use "to support the defense[] . . . that Defendant is not required to comply with the FLSA's overtime requirements because of the Railway Labor Act" while explicitly reserving its right to supplement if future circumstances warranted – exactly as requested by Plaintiffs.[5]

Second, in a completely separate discovery request propounded by Plaintiffs, Plaintiffs requested all nationwide contracts and agreements entered between FSS and its clients:

**<u>Request for Production No. 29:</u>**

Documents concerning contracts or agreements between Defendant and the persons or clients for which Defendant provided services during the FLSA Collective Period.

FSS objected to this request on several grounds, including that it was geographically overbroad, that it sought confidential information, and that it sought information not proportional to the

---

[4] *See* Rec. Doc. 168, at p. 11 & n.20.  Notably, even the cases cited in the Declaration of Christopher L. Williams in Support of Motion for Discovery Under Federal Rule of Civil Procedure 56(D) appear to focus on an employer's <u>current</u> operations at an airport. Rec. Doc. 179-2, at p. 11-12; *see e.g., Eulen Am. & Serv. Employees Int'l Union, Local 32BJ*, 2018 NLRB LEXIS 52 (N.L.R.B. January 30, 2018) (analyzing current operations at the Fort Lauderdale-Hollywood International Airport); *Roca v. Alphatech Aviation Servs.*, 960 F. Supp. 2d 1368 (S.D. Fla. 2013) (analyzing current operations performed at the Miami International Airport); *Vergara v. Am. Sales & Mgmt. Org. LLC*, No. 09-22649, 2010 U.S. Dist. LEXIS 151673, at *1 (S.D. Fla. June 17, 2010) (analyzing current operations performed at the Miami International Airport).  Indeed, Plaintiffs have failed to cite any authority from any jurisdiction that permits a court to focus on the past or historical operations of an employer.

[5] Contrary to Plaintiffs' claim that they requested all information "related to" Defendant's RLA defense, *see* Rec. Doc. 179-2, at ¶ 6, Plaintiffs only requested information "to support" or "supporting" FSS's RLA defense. *See* Plaintiffs' Interrogatory No. 15 and Request for Production No. 2, attached as "Exhibit B."  FSS is not and has never been under any obligation to provide all information "related to" its RLA defense.

3342088-1

needs of this lawsuit.  In objecting to this request, FSS relied in good-faith on a recent discovery

ruling issued by Magistrate Wilkinson in a nearly identical FLSA lawsuit filed by the same

Plaintiffs' Counsel against FSS – captioned *Rodney Pointer v. Flight Services & Systems, Inc*.,

No. 2:15-cv-3398 (E.D. La. 2015) – which similarly alleged a nationwide collective action and in

which nearly identical discovery was propounded.  These *Pointer* plaintiffs served an identical

discovery request seeking "[d]ocuments concerning contracts and agreements between

Defendant and the persons or clients for which Defendant provided services during the FLSA

Collective Period," and FSS objected on the same grounds. *See* Order on *Pointer* Plaintiffs'

Motion to Compel, No. 2:15-cv-3398, Rec. Doc. 98, at p. 15 (Wilkinson, J.).   Magistrate

Wilkinson subsequently denied Plaintiffs' request to compel FSS's response to this request:

> This request for production is overly broad and not proportional to the needs of
> this case. Flight Services does not dispute that it expected its managers to
> maintain a 20 percent profit margin. Its contracts with its airline customers
> nationwide are unnecessary to establish that fact. Defendant's labor costs and
> profits for its New Orleans location cannot be determined from its contracts with
> its customers, even if those contracts show the rates that the customers pay for
> defendant's services. The contracts are unimportant to resolving the issues in this
> case and the burden of producing them outweighs the likely benefit. Plaintiff's
> motion is denied as to Request for Production 29.

*Id*.  For these same reasons, FSS did not produce the contracts and agreements requested by

Plaintiffs.

B.      *Plaintiffs' First Motion to Compel Materials "In Support" of FSS'S RLA Defense.*

After the parties were unable to resolve various disputes concerning written discovery,

Plaintiffs filed a Motion to Compel requesting that the Court "overrule Defendant's objections

for the following specific discovery requests and require Defendant to provide full and complete

responses" to Interrogatories Nos. 1, 5, 7, 8, 9, 10, 14 (mislabeled as 15), 19, 21, and 23 and

Requests for Production Nos. 2, 5, 9, 12, 14, 15, 16, 17, 18, 21, 22, 23, and 24. *See* Rec. Doc. 63-

5

1, at p. 13-24.  Contrary to Plaintiffs' claim that "[f]or reasons unknown to Plaintiffs, Magistrate Knowles overlooked that Defendant had made confidentiality objections" to Request for Production No. 29 seeking FSS's contracts and agreements and that FSS refused to respond to this request "notwithstanding Judge Knowles' specific admonition" overruling FSS's confidentiality objections (Rec. Doc. 179-2, at ¶ 5), the objective record makes it clear that Plaintiffs did <u>not</u> move to compel any response to Request for Production No. 29.[6] *See* Doc. 63-1.  Magistrate Knowles did not overlook anything regarding Request for Production No. 29, and FSS did not ignore any admonition or order to respond to Request for Production No. 29.

Plaintiffs did, however, move to compel a supplemental response to Request for Production No. 2 seeking documents "to support" FSS's RLA defense.[7]  In response, FSS correctly noted it had provided a complete response to this request:

> FSS has identified persons and all positions (*i.e.,* all positions, all customer and grounds agents) that it asserts are not entitled to overtime in accordance with the Air Carrier Exemption of the FLSA.  Moreover, <u>FSS has provided all documents in its possession that it may use "to support" this defense, while reserving its right to supplement since discovery is just beginning.</u>

*See* Rec. Doc. 66, at p. 22-23 (emphasis added).  And, although Plaintiffs repeatedly claim in their Rule 56 motion that FSS represented to the Court that it had produced "all responsive documents it may use to support its [RLA defense]," see Rec. Doc. 179-2, at ¶ 7, 8, & 19, Plaintiffs' motion fails to include the entirety of the sentence wherein FSS explicitly reserved its right to supplement.  Indeed, FSS had produced all responsive materials (*i.e.,* the British Airway Contract, the British Airways Compliance Audit, the NMB records), particularly since the controlling analysis for an RLA defense focuses on an employer's <u>current</u> operations.  At that

---

[6] Moreover, as explained *supra*, at 4-5, FSS made numerous objections to Request for Production No. 29 in addition to its confidentiality objection.

[7] In conjunction, Plaintiffs also moved to compel a supplemental response to Interrogatory No. 23, which requested that FSS "identify all job titles and names of hourly employees who Defendant maintains are not eligible for overtime pay because of the Railway Labor Act or any other reasons."

time, FSS did not intend to use any other airline contracts "to support" its RLA defense, Plaintiffs did not move to compel production of other airline contracts in response to their Request for Production No. 29, and the Court did not order FSS to provide any additional airline contracts.[8]

C.      *Plaintiffs' Failure to Use the Produced RLA Materials During Depositions.*

        In October and December 2018, Plaintiffs took six depositions of FSS's Chairman and Chief Executive Officer (Robert A. Weitzel), Chief Operating Officer and Chief Commercial Officer (Phil Armstrong), Vice President & Administration Corporate Controller (Dia Ray), former Payroll Manager (Dennis Zerby), former Human Resources Coordinator (Renee Briggs), and former General Manager at the New Orleans Airport (Ben Burgis).  During these depositions, Plaintiffs almost entirely ignored the RLA materials produced by FSS in discovery. Specifically, Plaintiffs did not introduce the British Airways Compliance Audit in any deposition nor did Plaintiffs ask any questions whatsoever to any witness concerning this audit.  Plaintiffs further did not introduce the record documents in which the NMB had found FSS's parent company to be a "carrier" under the RLA in any deposition or ask any questions whatsoever to any witness about these record documents.  Finally, although Plaintiffs possessed the British Airways Contract for months in advance, Plaintiffs only introduced it as an exhibit in a single deposition (the deposition of Mr. Armstrong) and asked only a handful of questions concerning FSS's obligation to maintain training records and who pays for the training (*i.e.,* information related to Plaintiffs' claims for unpaid training and not about the contractual "control" exercised by British Airways which is relevant for RLA purposes).  Out of the 1347 total pages of deposition testimony taken by Plaintiffs, Plaintiffs even arguably inquired about the produced

_____

[8] The Court did order FSS to provide payroll and time records of 180 nationwide employees – which FSS did.

RLA materials on only 25 pages – the entirety of which is attached hereto as "Exhibits C-1 through C-6."[9]

**D.      *Plaintiffs' Second Motion to Compel Training Materials.***

After five out of six of these depositions were complete, on December 4, 2018, Plaintiffs filed a second Motion to Compel written discovery responses. *See* Rec. Doc. 136.   In this motion, Plaintiffs requested various training materials and, at this time, Plaintiffs moved – for the first time – to compel FSS's response to Request for Production No. 29 seeking nationwide contracts and agreements entered into by FSS. *See* Rec. Doc. 136-1, at p. 8-12.   To be clear, Plaintiffs did not move to compel these contracts until after they had taken the depositions of FSS's five corporate witnesses.   Plaintiffs then claimed that they needed nationwide "customer contracts," amongst other training materials, in order "to obtain some of the most important information and documents concerning Plaintiffs' FLSA claims for unpaid training time"; they did not claim that they needed this information for purposes of FSS'S RLA defense. *See* Rec. Doc. 136-1, at p. 1.   In support of their motion, Plaintiffs alleged that FSS refuses to pay its employees for failed classroom training (which FSS disputes) and moved to compel information concerning employee training, including such information contained in FSS's client contracts, "so that Plaintiffs have the benefit of an even playing field when prosecuting their FLSA claims against Defendant." *See id.*   Notably, Plaintiffs' second Motion to Compel did not seek any materials specific to FSS's RLA defense.[10]

---

[9] Although Plaintiffs did not to use the majority of RLA materials produced in discovery, Plaintiffs did question the deponents as to their personal knowledge concerning the requirements, influence, and control exerted over FSS by its airline clients, including Frontier, Allegiant, and Spirit.

[10] Contrary to Plaintiffs' allegation that FSS has failed to produce training records in discovery based upon alleged confidentiality grounds, *see* Rec. Doc. 179-2, at ¶ 23, FSS has produced all responsive records in its possession, custody, or control establishing the training completed by Plaintiffs and the amounts Plaintiffs were paid for such training.  FSS further produced its own training manuals, employee handbooks regarding training, and a description of the training required of FSS employees.  Dissatisfied with FSS's production, Plaintiffs filed their second motion to compel requesting these materials.  On the date of this filing, the Magistrate Judge ruled on Plaintiffs' pending

In response, on December 11, 2018, FSS maintained that production of FSS's <u>nationwide</u> contracts and agreements covering 24 airport locations was overbroad since all Plaintiffs were employed exclusively at the New Orleans Airport.  But, as a compromise, FSS voluntarily offered to produce contracts between FSS and the airlines that FSS serviced at the New Orleans Airport during the alleged collective period (*i.e.*, the Frontier Contract, the Allegiant Contract, and the Spirit Contract), subject to redaction of any information that did not pertain to Plaintiffs' claims (*i.e.,* bank account information for FSS's client, insurance policy limits).  *See* Rec. Doc. 141, at p. 8-9.  On January 15, 2019, FSS indeed produced these New Orleans Airport contracts in compromise.[11]  But Plaintiffs continued to seek <u>nationwide</u> contracts and agreements.[12]

On February 22, 2019 (the date of this filing), the Court ruled on Plaintiffs' pending Motion to Compel and FSS's Motion for Protective Order, denying Plaintiffs' blanket request for nationwide airline contracts for FSS, and instead holding that FSS should produce airline contracts that contain training information from the 14 airport locations where the 180-employees in the Court-ordered sample worked during the alleged collective period.[13]

---

Motion to Compel and FSS' pending Motion for Protective Order (Rec. Doc. 194), holding that FSS cannot be compelled to produce information that it does not have.

[11] Contrary to Plaintiffs' allegation that FSS refuses to produce "more than sixty pages of contractual language" that supposedly supplement the produced Frontier and Spirit Contracts and that "Defendants have not even produced all of the contracts from the New Orleans location," *see* Rec. Doc. 179-2, at ¶ 15 & 22, FSS has produced all contracts and portions of contracts applicable to the New Orleans Airport during the alleged collective period, and FSS has <u>repeatedly</u> informed Plaintiffs that it is not withholding any contracts or portions of contracts. *See* E-Mail Chain and Emails dated January 28, 2019 and February 20, 2019, attached as "Exhibit D."  While Plaintiffs allege that certain general handling agreements are part of the "contracts" that must be produced, this is incorrect.  Typically, airlines provide FSS with "shortened" versions of the general handling agreements, and this "shortened" version is the contract that is eventually entered into between FSS and the airline.  FSS has produced these executed contracts in their entirety. FSS simply does not have any additional contracts or portions of contracts pertaining to the New Orleans Airport during the alleged collective period to produce.

[12] Contrary to Plaintiffs' allegation that FSS filed a Motion to Protective Order (Rec. Doc. 143) seeking to preclude Plaintiffs from obtaining via third-party subpoenas the Frontier Contact, the Allegiant Contract, and the Spirit Contract, *see* Rec. Doc. 179-2, at ¶ 11, at the time of that filing, FSS had already offered in compromise to produce these exact contracts to Plaintiffs (which Plaintiffs had not accepted). *See* Rec. Doc. 141, at p. 8-9.  FSS even repeated this offer of compromise in its Motion to Protective Order. *See* Rec. Doc. 143-1, at p. 7-8.

[13] Rec. Doc. 194, at pp. 4-6. As fully explained herein and in FSS's pending Motion for Partial Summary Judgment, these contracts – from airport locations other than the New Orleans Airport – are in no way relevant to FSS's pending Motion for Partial Summary Judgment regarding the application of the Air Carrier Exemption of the FLSA

E.      *FSS's Motion for Partial Summary Judgment.*

On January 29, 2019, FSS filed its Motion for Partial Summary Judgment asserting FSS is a "carrier" subject to the RLA whose employees at the New Orleans Airport are exempt from overtime compensation under the FLSA's Air Carrier Exemption. *See* Rec. Doc. 168.  In this motion, FSS explicitly stated that the controlling test to determine carrier status focuses on FSS's current operations:

> Courts and the NMB have held that because "the RLA deals with the present status and present interest of employees, the inquiry centers on the current state of affairs." *Venegas v. Glob. Aircraft Serv.*, No. 2:14-cv-249, 2016 U.S. Dist. LEXIS 130164, at *22 (D. Me. Sep. 23, 2016) (quoting *In re Argenbright Sec., Inc.*, 29 NMB 332, 337 (2002)) (emphasis added).  British Airways is the only airline that FSS currently services at the New Orleans Airport and, therefore, the "control" that British Airways exercises over FSS is the pertinent inquiry. However, since some courts have not explicitly defined the most relevant time frame, FSS will address its relationships with the four airlines it primarily serviced in New Orleans since October 21, 2013.

*See* Rec. Doc. 168-1, at p. 11 & n.20.  FSS thus only chose to briefly address its previously-terminated contracts for Frontier, Allegiant, and Spirit out of an abundance of caution.  Since the Frontier, Allegiant, and Spirit contracts had been previously produced to Plaintiffs in response to their second Motion to Compel documents regarding Plaintiffs' claims for unpaid training time, FSS further only briefly addressed these contracts in its Motion for Partial Summary Judgment – and the vast majority of FSS's summary-judgment evidence is comprised from the deposition testimony of Plaintiffs, the corporate witnesses deposed by Plaintiffs, and the British Airways materials produced in July 2018.

---

to FSS's New Orleans Airport location.  To the contrary, FSS's entitlement to the Air Carrier Exemption at the New Orleans Airport is based exclusively upon the <u>current</u> control exercised by FSS's sole current client, British Airways, at FSS' location at the New Orleans Airport.  Thus, the production of any additional contracts from locations outside of New Orleans should in no way prevent this Court from ruling upon FSS's pending Motion for Partial Summary Judgment or otherwise justify additional discovery from Plaintiffs as to the pending Motion.

There was no attempt by FSS to "wait until the 11th hour" to ambush Plaintiffs with the terminated Frontier, Allegiant, and Spirit Contracts. *See* Rec. Doc. 179-2, at ¶ 19.  Rather, FSS produced the materials it intended to use "to support" its RLA defense as early as July 3, 2018, and Plaintiffs did not move to compel airline contracts prior to taking the depositions of FSS's corporate employees.  After these depositions, Plaintiffs filed their second motion to compel seeking <u>nationwide</u> contracts and agreements that Plaintiffs claimed were needed to "prosecute" their claims for unpaid training time (and <u>not to defend against FSS's RLA defense specific to its operations at the New Orleans Airport</u>). *See* Rec. Doc. 136-1, at p. 1.  Upon filing of Plaintiffs' motion, FSS timely offered in compromise to produce airline contracts specific to the New Orleans Airport during the alleged collective period and, shortly thereafter, produced the Frontier, Allegiant, and Spirit Contracts in response to Plaintiffs' motion to compel training information.  As the contracts were already in discovery, FSS briefly addressed them when it later filed its Motion for Partial Summary Judgment.  As will be established *infra*, at p. 15-17, the Allegiant, Frontier, and Spirit Contracts were barely touched upon in FSS's motion and, in fact, discrete portions of these contracts were cited <u>in only 3 out of 117 total footnotes</u> throughout FSS's 30-page Memorandum in Support.[14]  And, as will further be established *infra* (p. 17-19), the three propositions supported by these footnotes (*i.e.,* that airlines could dictate certain training requirements for FSS employees, that some airlines could dictate pay rates for FSS's employees by position, and that airlines could access and conduct audits of FSS's operations) are undisputed as both Plaintiffs and FSS's corporate witnesses testified at length as to each of these points during their depositions.  Thus, FSS disputes the allegations in Plaintiffs' supporting Rule 56(d) declaration that they should now be afforded additional time for discovery

---

[14] *See* 168-1, at n.39, 47 & 96.  FSS laid the foundation for and introduced the contracts into evidence in footnote 21 of the Memorandum in Support, Rec. Doc. 168.

and maintains that Plaintiffs' Motion for Discovery and Other Appropriate Relief Pursuant to Rule 56(d) should be denied – for the reasons more fully explained herein.

**LAW AND ARGUMENT**

**I.     Standard of Review.**

Fed. R. Civ. Proc. 56(d) "allows a court to delay consideration of a motion for summary judgment when 'a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'" *Carlise v. Normand*, No. 16-3767, 2018 U.S. Dist. LEXIS 148076, at *10 (E.D. La. Aug. 30, 2018) (Milazzo, J.) (quoting Fed. R. Civ. Proc. 56(d)).   The party seeking relief under Fed. R. Civ. Proc. 56(d) thus must prove two elements.    First, the party seeking relief must establish that he or she has "diligently pursued discovery." *Jacked Up, LLC v. Sara Lee Corp*., 854 F.3d 797, 816 (5th Cir. 2017) (internal quotations omitted).   Second, the party seeking relief further "must demonstrate how additional discovery will create a genuine issue of material fact." *Id.* (internal citations omitted).   In particular, the party opposing summary judgment "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id*. (internal citations omitted).

"If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010).   Considering the totality of summary-judgment evidence already presented, the discovery sought by a party must be sufficient to "defeat summary judgment." *Carder v. Cont'l Airlines, Inc.,* 595 F. App'x 293, 298 (5th Cir. 2014) ("Proof of this bias would not defeat summary judgment of Kissinger's claims because Continental has offered a legitimate,

12

nondiscriminatory reason for its failure to hire Kissinger. . . thus, this portion of the Rule 56(d) motion must also be denied."). Merely requesting additional discovery on topics that have largely already been addressed in discovery is insufficient. *Schurr v. Molacek*, No. 15-7135, 2016 U.S. Dist. LEXIS 157069, at *5 (E.D. La. Nov. 14, 2016) (Milazzo, J.) (denying Rule 56(d) motion where "Plaintiffs assert that certain depositions will reveal additional information and include by declaration a non-exhaustive list of concerns. However, numerous questions in that list have already been answered by Defendants in discovery."). Pursuant to this standard, Plaintiffs' motion to conduct belated, immaterial discovery should be denied.

## II. Plaintiffs' motion should be denied because Plaintiffs have failed to diligently pursue the discovery sought.

Plaintiffs have failed to carry their burden of diligently pursuing the discovery they now seek. And, for this reason alone, Plaintiffs' motion should be denied. In support of their motion, Plaintiffs allege that they "have not been afforded the opportunity to depose Defendant's airlines customers," *see* Rec. Doc. 179-2, at ¶ 20,[15] but Plaintiffs have offered no explanation as to why they have failed to even request these depositions, much less take these depositions, in the nearly <u>two and a half years</u> that this action has been pending. *Danos v. Union Carbide Co*., 541 F. App'x 464, 467 (5th Cir. 2013) (affirming denial of Rule 56(d) motion when summary judgment motion was filed over one year after the lawsuit was filed). Since the inception of this litigation, Plaintiffs have known the identities of FSS's airline customers, as these are the very airlines that Plaintiffs serviced at the New Orleans Airport (*i.e.,* British Airways, Frontier, Allegiant, and

---

[15] Although Plaintiffs do not specify which FSS employees they may need to "reconvene" for depositions, *see* Rec. Doc. 179-2, at p. 4 & n.1, FSS maintains that reconvention of any depositions is unnecessary as Plaintiffs previously failed to introduce the vast majority of RLA materials into depositions or question the witness regarding the information produced (including the British Air contract) and since Plaintiffs already inquired as to the deponents' personal knowledge of the "control" exerted by airlines over FSS's operations.

Spirit).[16]  Yet, Plaintiffs never requested any airline depositions until a week after FSS filed its Motion for Partial Summary Judgment.[17]  Plaintiffs undoubtedly had the ability to seek their depositions, as Plaintiffs previously served other third-party discovery on these airlines, but simply chose not to do so.  Such a delay in deposition scheduling mandates denial of Plaintiffs' Rule 56(d) motion – even more so given that Plaintiffs and FSS's corporate witnesses have already been deposed as to the "control" exercised by these same airlines. *Schurr v. Molacek*, No. 15-7135, 2016 U.S. Dist. LEXIS 157069, at *5 (E.D. La. Nov. 14, 2016) (Milazzo, J.) (denying Rule 56(d) motion where "Plaintiffs assert that certain depositions will reveal additional information and include by declaration a non-exhaustive list of concerns. However, numerous questions in that list have already been answered by Defendants in discovery."); *Leslie v. Noble Drilling (U.S.) L.L.C.,* No. 16-0610, 2017 U.S. Dist. LEXIS 38555, at *42 (S.D. Tex. Mar. 17, 2017) (denying Rule 56(d) motion where "even after defendant filed a motion for summary judgment on December 1, 2016, plaintiff failed to request depositions").[18]

To the extent Plaintiffs may argue that they needed the airline contracts prior to taking any airline's deposition, this is belied by the fact that Plaintiffs possessed the British Airways

---

[16] While Plaintiffs may have been diligent in pursuing other discovery (*i.e.*, employees' time and pay records), Plaintiffs have not been diligent in pursing the discovery they claim they now need to oppose FSS's motion (*i.e.*, the airline depositions).

[17] A week after FSS filed its Motion for Partial Summary Judgment, Plaintiffs requested FSS's availability to take the corporate depositions of British Airways, Frontier, Allegiant, and Spirit.  This was the first time Plaintiffs had ever indicated to FSS that they intended to take the depositions of any airlines.  To date, no depositions have been scheduled.

[18] To the extent that Plaintiffs claim they require production of an alleged Jet Blue contract applicable to the New Orleans Airport, *see* Rec. Doc. 179-2, at ¶ 22, this argument is a red herring because FSS did not service Jet Blue at the New Orleans Airport during the collective period alleged by Plaintiffs (May 5, 2014 through present).  To the extent Plaintiffs claim that JetBlue disavowed control over FSS in a previous lawsuit, *id.*, this is similarly irrelevant to FSS's pending motion as that lawsuit pertained to FSS's operations at the Boston Airport, and the RLA analysis must be conducted on an airport-by-airport basis. *Huntleigh*, 40 NMB 130, 135 (2013) (holding that determination of control must be made on airport-by-airport basis because "contracts and local practices can vary in a determinative manner for different operations"); *ABM Onsite Servs.-West, Inc. v. NLRB*, 849 F.3d 1137 (D.C. Cir. 2017) (carrier status for operations at Portland Airport).  Moreover, an RLA defense was not at issue in that Boston lawsuit and the Boston-specific contract in that lawsuit terminated on June 24, 2008 – well outside of any time period relevant to this action.  Finally, to the extent that Plaintiffs allege they require production of charter contracts applicable to the New Orleans Airport, *id.*, FSS does not have any such contracts to produce.

Contract (as well as the British Airways Compliance Audit and prior NMB decisions) – the only materials pertaining to FSS's <u>current</u> operations for purposes of the RLA – since July 3, 2018, but never sought to depose British Airways.  This is further belied by the fact that Plaintiffs did not move to compel FSS to produce its customer contracts until December 2018 (and only then for training-claim purposes) – well into the discovery period and after Plaintiffs had taken five depositions of FSS's corporate employees.  Notably, while Plaintiffs still have not scheduled the depositions of any of FSS's airline clients, Plaintiffs now request a continuance from this Court to take numerous, out-of-state corporate depositions of FSS's airline clients.  Plaintiffs have informed FSS that they do not intend to go forward with the corporate depositions of any airline until after Magistrate Douglas rules on several recently-filed discovery motions – which seek information irrelevant and immaterial to FSS's RLA defense[19] – and that potential deposition dates even as far out as April likely will not work.[20]  There is no doubt that the indefinite continuance requested by Plaintiffs will significantly delay all pre-trial deadlines and this Court's trial setting, which Plaintiffs' motion even admits.  The continuance also will necessarily delay the Court's issuance of a ruling on Plaintiffs' pending Motion for Certification, since the contents of the proposed Notice to the collective (if any) – including whether Plaintiffs are entitled to the overtime they seek – cannot be determined until after the resolution of FSS's Motion for Partial Summary Judgment.

---

[19] For example, Plaintiffs served subpoenas on seven of FSS's airline clients seeking nationwide contracts, training modules, information concerning the estimated time spent training, evidence of failed training, evidence of completed training, evidence of the amount of compensation paid for training, and other documents exclusively related Plaintiffs' claims for unpaid training time. FSS filed a motion seeking to limit the scope of Plaintiffs' subpoenas with Magistrate Knowles' previous discovery rulings, which was granted in part and denied in part on February 22, 2019 (the date of this filing).  (Rec. Doc. 194).  Regardless, the additionally requested information (or the more limited information to be produced) is immaterial to FSS's RLA defense.  For example, the amount of compensation paid for training relates to Plaintiffs' claims for unpaid training – and not to FSS's RLA defense. Similarly, many of these airlines were not serviced by FSS at the New Orleans Airport – the sole location at issue in FSS's Motion for Partial Summary Judgment.  The only materials even arguably related to FSS's RLA defense (the terminated contracts for services at the New Orleans Airport) have already been produced.

[20] *See* E-Mail Chain dated February 14, 2019, attached as "Exhibit E."

Indeed, Plaintiffs actions speak louder than their words.  It is undisputed that Plaintiffs have possessed – since July 2018 – all of the documents that FSS intended to use in support of its RLA defense relative to airline, British Airways (including the British Airways contract, the British Airways compliance audit, and the NMB decisions).[21]  But Plaintiffs never requested the deposition of any British Air representative, even though they now claim to need this discovery to refute FSS's pending Motion for Partial Summary Judgment.   Moreover, even though Plaintiffs possessed all of these documents in advance of all six of FSS's corporate witness depositions, Plaintiffs tellingly failed to use the British Airways Compliance Audit or the NMB decisions produced in any of the six corporate depositions, again even though they now claim they need to retake these depositions to refute FSS's pending Motion for Partial Summary Judgment.   And Plaintiffs only used the British Airways Contract in one of the six corporate depositions – and their entire questioning regarding the contract was minimal and exclusively focused on the merits of Plaintiffs' alleged claim for unpaid training time (and not the RLA defense at issue in FSS's pending Motion for Partial Summary Judgment), again even though they now claim they need to retake these depositions.  To avoid any doubt, FSS has attached the entirety of Plaintiffs' questioning regarding the British Airways Contract as Exhibit F hereto.

Since FSS has filed its comprehensive Motion for Partial Summary Judgment, Plaintiffs now claim that they must do discovery which they could have done (but failed to do) months ago.  Given all of the foregoing, Plaintiffs simply cannot carry their burden of proving they were diligent in seeking the discovery, and Plaintiffs' motion should be denied on that basis alone.  *Spencer v. Fei, Inc.,* 725 F. App'x 263, 269 (5th Cir. 2018) ("Because Spencer was not diligent,

---

[21] As noted *supra*, FSS's current operations are the only appropriate inquiry in determining the application of the Air Carrier exemption to the FLSA.  FSS's sole client for several years at the New Orleans Airport has been British Airways, and thus, the only material facts for purposes of FSS's pending Motion for Partial Summary Judgment involve British Air's control of FSS.

we need not address whether he has shown why he needed additional discovery to create a genuine issue of material fact.").

II.     **Plaintiffs' motion should be denied because Plaintiffs cannot demonstrate that additional discovery will create a genuine issue of material fact.**

Even if Plaintiffs had diligently pursued the discovery they now claim they need (they did not), Plaintiffs' motion should be denied because Plaintiffs cannot establish that this discovery will create a genuine issue of material fact. *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) ("If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."); *Carder v. Cont'l Airlines, Inc.*, 595 F. App'x 293, 298 (5th Cir. 2014) (even where discovery sought could go to one essential element, holding that the discovery sought must be sufficient to "defeat summary judgment" in light of the totality of summary judgment evidence already presented). Here, Plaintiffs cannot establish that the sought after discovery will create a genuine issue of material fact because the three Plaintiffs deposed to date (Mr. Cook, Mr. Johnson, and Ms. Barre) have extensively testified and admitted to the "control" exerted by the airlines over FSS and its employees at the New Orleans Airport. Plaintiffs' own testimony is fatal to their request for a Rule 56(d) continuance, and any additional discovery is immaterial.

Although Plaintiffs allege that they need the depositions of FSS's airline clients in order to determine the extent of "control" exercised by the airlines over FSS's operations and employees for purposes of the FLSA's Air Carrier Exemption, this argument ignores the fact that the deposed Plaintiffs have uniformly admitted to each of the six "control" factors relevant to the analysis. First, Plaintiffs admitted that the airlines control the manner in which FSS conducts its business by providing detailed operating instructions, procedures, and manuals to FSS and its

employees[22] and by monitoring, assessing, and correcting the performance of FSS and its employees.[23]   Second, Plaintiffs admitted that the airlines have access to FSS's operations and records through on-site monitoring and on-demand audits.[24]   Third, Plaintiffs admitted that the airlines play a prominent role in FSS's personnel decisions, including direct involvement in the hiring, discipline, and termination of FSS employees – including Plaintiffs.[25]   Fourth, Plaintiffs admitted that the on-site airline managers directly oversee, supervise, and direct FSS's employees on a daily basis.[26]   Fifth, Plaintiffs admitted that FSS employees are held out to the public as airline employees because FSS employees on the customer service side wear uniforms with the logo or insignia of the airlines, and the public perceives them to be airline employees to whom they lodge complaints about the airline.[27]   Sixth, and finally, Plaintiffs admitted that the airlines exert almost exclusive control over FSS employee training as each airline requires FSS employees to complete carrier-specific training, provides the training materials and systems, and administers the training.[28]   Plaintiffs admitted each of these factors, and FSS's motion should be granted on the basis of Plaintiffs' deposition testimony alone.   This control was further confirmed during depositions of FSS's corporate employees who testified as to the control airlines exercise in practice (and in addition to any contractual control exerted by the airlines).[29]

---

[22] *See, e.g.,* Johnson Depo. at 52:8-20; 53:16-54:9; 56:1-6; 129:1-130:18.  The deposition excerpts cited herein were all cited to and attached to FSS's Motion for Partial Summary Judgment.  Additionally, these are mere examples of Plaintiffs' admissions as to each of the six "control" factors.  For a complete list of Plaintiffs' admissions, FSS refers to its complete Memorandum in Support of Partial Summary Judgment, Rec. Doc. 168.

[23] *See, e.g.,* Cook Depo. at 59:6-23; 60:2-6; 60:16-18; Barre Depo. at 100:18-101:20; Johnson Depo. at 46:16-47:7; 102:8-24.

[24] *See, e.g.,* Cook Depo. at 59:6-23; 60:2-6; Johnson Depo. at 102:8-24; 156:9-14.

[25] *See, e.g.,* Cook Depo. at 35:3-22; 73:20-74:14; 75:17-76:1; 81:10-82:4; 77:6-20; 77:25-81; Johnson Depo. at 44:9-46:15.

[26] *See, e.g.,* Cook Depo. at 59:6-23; 60:2-6; 60:16-18; Barre Depo. at 100:18-101:20; Johnson Depo. at 46:16-47:7; 60:15-61:15.

[27] *See, e.g.,* Cook Depo. at 63:13-65:1; Barre Depo. at 86:11-87:1; 107:20-109:1.

[28] *See., e.g.,* Cook Depo. at 59:6-23; 73:3-19; 74:21-75:7; 133:14-134:2; Johnson Depo. at 56:11-57:15; 60:3-25; 143:20-23; 144:4-23; Barre Depo. at 162:13-163:24; 185:1-186:1; 188:17-24.

[29] The contracts do not contradict the assertions of Mr. Armstrong's declaration (and his deposition testimony) which stated that airlines can (and do) impose requirements, control, and standards beyond that which is stated in the

Given Plaintiffs' own damaging testimony, as further strengthened by the testimony of FSS's corporate employees, any additional third-party discovery is immaterial.

The immateriality of the discovery sought by Plaintiffs is further evidenced by the fact that the Allegiant, Frontier, and Spirit Contracts – which form the _entire_ basis of Plaintiffs' motion – were barely touched upon in FSS's Motion for Partial Summary Judgment.  Discrete portions of these contracts were cited in _only 3 out of 117 total footnotes_ throughout FSS's 30-page Memorandum in Support, and each of the three propositions supported by these footnotes were independently admitted to by both Plaintiffs and FSS's corporate witnesses during depositions:

- FSS cited to two paragraphs (¶ 4 & 2.08) of the Allegiant Contract for the proposition that Allegiant could dictate certain training requirements for FSS employees and that Allegiant could access and audit FSS's operations and records on demand.  This is undisputed.  First, that Allegiant could (and did) dictate certain training requirements for FSS employees was admitted to at length by lead plaintiff, Mr. Cook, who testified that Allegiant supervisors came to the New Orleans Airport to administer mandatory training and that he and other FSS employees could be (and were) disciplined for failing to comply with Allegiant's training requirements.[30] This was corroborated by the deposition testimony of plaintiffs, Ms. Barre and Mr. Johnson, and FSS's corporate employees who uniformly testified that airlines dictate certain training requirements for FSS employees.[31] Second, that Allegiant could (and did) access and audit FSS's operations and records on demand is similarly undisputed as Mr. Cook admitted that Allegiant supervisors observed FSS employees and made sure they were operating correctly and plaintiff, Mr. Johnson, testified that airlines could (and did) conduct audits.[32]

- FSS cited to two provisions (¶ 1.7 and Page 2) of the Frontier Contract for the propositions that Frontier could dictate certain training requirements for FSS employees and that Frontier could dictate pay rates for FSS's employees by position.  Again, this is

---

contracts. Plaintiffs' deposition testimony confirmed this to be true, and controlling jurisprudence recognizes that there may be practical control beyond that which is provided for in industry contracts.  Moreover, to the extent Plaintiffs cite documents and law referring an independent contractor and/or joint-employment relationship, those are different tests than the applicable "control" test to determine whether FSS is a "carrier" under the RLA whose employees are exempt from the FLSA's overtime requirements.  Essentially all airline affiliate companies are arms-length independent contractors with their airline's clients, but courts and the NMB routinely find sufficient control within these contractor relationships to render airline affiliate companies "carriers" under the RLA.

[30] Cook Depo. at 59:6-23; 73:20-74:4; 77:6-20; 77:25-81:7; 139:23-140:7.

[31] Burgis Depo. at 39:24-40:8; 43:20-44:1; Armstrong Depo. at 125:1-11; Johnson Depo. at 52:8-20; 53:16-18; 56:1-57:15; 60:3-25; 144:4-23; Barre Depo. at 162:13-163:24; 170:4-16.

[32] Cook Depo. at 59:6-23; 60:2-6; Johnson Depo. at 102:8-24; 156:9-14.

3342088-1

undisputed.  First, that Frontier could (and did) dictate certain training requirements for FSS employees is undisputed as plaintiffs, Ms. Barre and Mr. Johnson, testified at length as to the training required and administered by Frontier.[33]  This was further affirmed by the deposition testimony of FSS's corporate employees.[34]  Second, that Frontier could dictate pay rates for FSS's employees by position cannot be disputed as this was established during the deposition of FSS's former General Manager at the New Orleans Airport.[35]

- FSS cited to three provisions (¶ 12, Attachment A, and ¶ 15.1) of the Spirit Contract for the propositions that Spirit could dictate certain training requirements for FSS employees, that Spirit could dictate pay rates for FSS's employees by position, and that Spirit could access and audit FSS's operations and records on demand.  Again, these points are undisputed.  First, that Spirit could (and did) dictate certain training requirements for FSS employees is undisputed as plaintiffs, Ms. Barre and Mr. Johnson, testified at length as to the training required and administered by Spirit.[36]  This was further affirmed by the deposition testimony of FSS's corporate employees.[37]  Second, that Spirit could dictate pay rates for FSS's employees by position cannot be disputed as this was established during the depositions of FSS's former General Manager at the New Orleans Airport.[38]  Third, that Spirit could (and did) access and audit FSS's operations and records on demand is undisputed as plaintiff, Mr. Johnson, testified that Spirit conducted comprehensive audits.[39]

The summary-judgment record thus firmly establishes there is no genuine issue of material fact regarding the extensive control exercised by the airlines – regardless of whether the Court even considers the terminated Frontier, Spirit, and Allegiant Contracts (which are not relevant to FSS's underlined current operations).  Plaintiffs' motion should be denied, and FSS's Motion for Partial Summary Judgment should be granted in its entirety.  *Raby,* 600 F.3d at 561; *Carder,* 595 F. App'x at 298; *Schurr,* 2016 U.S. Dist. LEXIS 157069, at *5.

## CONCLUSION

Plaintiffs have failed to carry their burden for relief under Fed. R. Civ. Proc. 56(d) for two, independent reasons.  First, Plaintiffs have not diligently pursued the discovery now sought

---

[33] Johnson Depo. at 56:11-57:15; 60:3-25; 144:4-23; Barre Depo. at 162:13-163:24; 185:1-186:1; 188:17-24.

[34] Burgis Depo. at 39:24-40:8; 43:20-44:18; Armstrong Depo. at 125:1-11.

[35] Burgis Depo. at 27:18-21.

[36] Johnson Depo. at 56:11-57:15; 60:3-25; 144:4-23; Barre Depo. at 162:13-163:24; 185:1-186:1; 188:17-24; Burgis Depo. at 39:24-40:8; 43:20-44:1; Armstrong Depo. at 125:1-11.

[37] Burgis Depo. at 39:24-40:8; 43:20-44:18; Armstrong Depo. at 125:1-11.

[38] Burgis Depo. at 27:18-21.

[39] Cook Depo. at 59:6-23; 60:2-6; Johnson Depo. at 102:8-24; 156:9-14.

3342088-1

as they have failed to schedule the depositions of any of FSS's airline clients in the nearly two and a half years that this action has been pending.  Second, the depositions of FSS's airline clients will not create a genuine issue of material fact sufficient to defeat summary judgment because the deposed Plaintiffs have uniformly admitted to the pervasive "control" that airlines exercise over every aspect of FSS's operations and employees.  Plaintiffs' own testimony is fatal to their claims, and the additional third-party discovery belatedly sought by Plaintiffs is immaterial.    Accordingly, Plaintiffs' request to seek such immaterial discovery – which will admittedly delay this Court's pre-trial deadlines and trial setting – should be denied, and FSS's Motion for Partial Summary Judgment should be granted.

Respectfully Submitted:

CHAFFE McCALL, LLP

/s/ *Sarah Voorhies Myers*

Sarah Voorhies Myers (La. Bar No. 30107)
Amy L. McIntire (La. Bar No. 35241)
2300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163
T:  (504) 585-7009
F: (504) 544-6092
E: myers@chaffe.com
E: mcintire@chaffe.com

and

LoPRESTI MARCOVY & MAROTTA, LLP

/s/ *Thomas P. Marotta*
Thomas P. Marotta, Esq. (OH Bar No. 0024884)

1468 West Ninth Street, Suite 330
Cleveland, Ohio  44113
T:  (216) 241-7740
F:  (216) 241-6031
E:  tpm@lmm-llp.com
E:  msl@lmm-llp.com
*Attorneys for Defendant,*
*Flight Services & Systems, Inc.*